## Corey *v.* Edgewood Borough, Appellant (No 1).

*Deed—Exception or reservation—Construction—Right of way of railroad—Railroad.*

The primary rule of construction applicable to a clause in a deed in the form of an exception or reservation, is to gather the intention of the parties from the words by reading, not simply a single clause, but the entire context, and where the meaning is doubtful by considering such circumstances as they are presumed to have considered.

If the language of a deed is free from ambiguity, and is sufficiently clear to define the character and extent of the reservation, the rule which resolves all doubt against the grantor, because the words of the deed are his, can have no application.   The rule does not require the court to take up the construction of the instrument with a mind hostile to the right claimed by the grantor and apparently reserved in his deed.

Where a deed unambiguous in its terms reserves a private way with the right to maintain a railroad thereon, and it appears that at the time the deed was made, the railroad on the land was used for the purpose of transporting coal from certain mines to a trunk line railroad, but that some years afterward a portion of it only was used, and that for the transportation of lumber, the court will not construe the reservation so as to import into it a condition or covenant that the railroad should be maintained throughout its entire length, or that it should be used for no other purpose than the transportation of coal.

*Streets—Dedication—User—Reservation of right of way—Railroad.*

Where a deed reserves a private way with the right to maintain a railroad thereon, and there are no streets on the land conveyed, but thereafter the grantee makes and records a plan of streets on the land and subsequently the public use a street crossing the railroad without disturbing the railroad track or the use of the same, it cannot be said that either the dedication of the street or the acceptance implied from its user, or both together, amount in law to an appropriation of the easement reserved in the deed, nor can it be charged that after the dedication of the street, the continuance of the railroad and the operation of the cars thereover constituted a public nuisance.

*Railroads—Private railroad—Nuisance—Act of April* 15, 1851, *section* 7, *P. L. of* 1852, 720.

Where a deed reserves a private way with the right to maintain a railroad thereon, and the railroad is connected with a public railroad more or less remote from the land conveyed, the grantee has no standing to aver that the railroad as a whole was unlawful because it connected with a public railroad in violation of the Act of April 15, 1851, section 7, P. L. of 1852, 720, and that therefore the reservation is void, nor after a street over the private railroad has been dedicated by the grantee and accepted

by the public can the borough in which the street and private railroad are located object to the validity of the reservation, or of the illegal character of the private railroad.

*Railroad—Private railroad—Nuisance—Borough.*

The fact that a private railroad on a private way in a borough is negligently operated by the obstruction of streets with standing cars·and by the accumulation of rubbish and waste material in the private way, does not give the borough the right to destroy the railroad as a nuisance per se.

*Boroughs—Ordinance—Paving and grading—Eminent domain—Private railroad—Railroad.*

Where a private railroad in a borough has been torn up in the work of grading and paving a street in pursuance of a paving and grading ordinance, the borough will be enjoined from preventing the owners of the railroad from relaying it, where it appears that no ordinance had been passed condemning the right of way by an act of eminent domain.

Argued May 9, 1901.   Appeal, No. 164, April T., 1901, by defendant, from decree of C. P. No 2, Allegheny Co., Oct. T., 1900, No. 671, on bill in equity in case of J. B. Corey v. The Borough of Edgewood.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Bill in equity for an injunction.

SCHAFER, J., found the facts to be as follows:

The bill is for an injunction to restrain further interference by defendant with railroad tracks which were in the possession and use of the plaintiff across a street of defendant borough, and to require the defendant to restore such parts of plaintiff's tracks as it has already torn up.

### FINDINGS OF FACT.

1. For some years before 1882 the firms of Shoenberger & Company, Dickson, Stewart & Company and C. H. Armstrong were owners of coal mines in Wilkins and Sterrett townships, in Allegheny county, called the Hampton coal mines, in the following proportions: Shoenberger & Company, twenty-three sixty-thirds; Dickson, Stewart & Company, twenty-three sixty-thirds; C. H. Armstrong, seventeen sixty-thirds.

2. These parties procured a charter for a railroad company called the Edgewood Railroad Company and laid out and constructed on the ground a railroad from the Pennsylvania Railroad to the Hampton coal mines, a distance of less than a mile,

over and across the lands of the Western Pennsylvania Institution for the Deaf and Dumb, and of others. The Edgewood Railroad Company, by proceedings which were reported in the Edgewood Railroad Company's Appeal, 79 Pa. 257, was enjoined from maintaining or operating the road over the lands of the deaf and dumb institution, as being trespassers thereon.

3. After beginning a proceeding under the lateral railroad law, afterwards declared invalid by the Supreme Court in the case of the Pittsburg National Bank of Commerce v. Shoenberger et al., 111 Pa. 95, and while that proceeding was pending, the above named persons and firms purchased the lands of the deaf and dumb institution, over which the track was laid in September, 1882, taking the deed for the same in the name of John Z. Speer. This purchase was made by Mr. Speer under the direction of the owners of the coal mines, in writing, dated November 9, 1881, whereby he was authorized to make the best arrangement possible, in his judgment, with the owners for a permanent right of way for the Edgewood Railroad Company.

4. In the year 1888 proceedings were begun, for the incorporation of the borough of Edgewood, the place in question being within the limits of the borough, and in November, 1888, a decree of incorporation was entered, which was confirmed by the Supreme Court in In the Matter of the Incorporation of the Borough of Edgewood, 130 Pa. 348, and the decree was thereupon recorded in the recorder's office. The petition for the incorporation of the borough has not been recorded.

5. On July 10, 1890, John Z. Speer, by direction of his cestuis que trustent, conveyed the land so held by him to one John McIntosh, the deed containing the following reservation and exception: "Reserving therefrom and thereout the right-of-way of the railroad now upon said land, twenty-eight (28) feet wide, with a double track through, over and upon said land, as said railroad is now located upon said land, so that said right-of-way shall be reserved to the said John Z. Speer, his heirs and assigns, forever." Which exception refers to the right-of-way and railroad track in question in this case.

6. There is in fact a street, laid out and open of the width of fifty feet, called Walnut street, which crosses the right of way in question at the point where the railroad track was torn up, which is about 150 feet from the Pennsylvania Railroad;

but it does not definitely appear when or how such street was laid out. It did not exist at the time of. Speer's conveyance to McIntosh.

7. On October 17, 1899, the "Hampton coal mines" being the persons and firms above named, as partners or cotenants, assigned in writing (Exhibit No. 3) to J. B. Corey, the plaintiff, for the consideration of $3,100, all the rails, ties, etc., constituting the coal railroad from the Hampton coal mines, and the locomotives, cars and other items of personal property enumerated, and their interests in certain leaseholds.

8. On October 27, 1899, in consideration of the above purchase of $1.00, Shoenberger & Company, and Dickson, Stewart & Company, by writing, Exhibit No. 2, granted to the plaintiff all their interests in the right of way reserved in the deed of Speer to McIntosh, above mentioned.

9. From the Pennsylvania Railroad to a street called Coal street, a distance of 852 feet, the railroad tracks continued upon the ground and were used up until the time of the grievance complained of. Beyond Coal street the whole of the road to the Hampton coal mines, a distance of over half a mile, was torn up and abandoned, and largely occupied by the adjoining owners of property, and crossed by various streets of the borough of Wilkinsburg at different grades.

10. The land sold by Speer to McIntosh, upon which the reservation of the railroad was made, does not extend to the Pennsylvania Railroad, and the railroad is laid between the Pennsylvania Railroad and the land in question upon lands now owned by Elliot Ramsey and others, upon a lease made January 31, 1887, between the then owners of the land and Shoenberger & Company, and the other owners of the railroad, " for the term of fifteen years from the date hereof, or until said coal be all mined and exhausted ; provided the same be done within the said period of fifteen years, which is the utmost duration of this lease."

11. The use by the plaintiff of that part of the track, or switch, lying beyond Walnut street from the Pennsylvania railroad was principally that of letting it out to a lumber merchant and a few others for the removal of cars loaded with lumber and other merchandise to point or at near Coal street, and the income derived by him from this source was about $30.00

per month. No locomotive was used on the railroad track, but the cars were moved by horses.

12. On October 27, 1899, the council of the borough of Edgewood passed an ordinance, which was afterwards approved by the burgess, authorizing the grading, paving and curbing of Walnut street. This ordinance was duly advertised, and was entered at length in the minute book of the council of the borough of Edgewood, but was not copied into an ordinance book and there certified to by the burgess. Under this ordinance the street was graded, the grade at the right of way in question being raised about three feet above the former level. The street was paved at that grade, and it was in the process of raising the grade and paving the street that the railroad track, where it crossed the street, was torn up. The difference of grade between the railroad track as now laid at each side of the street, and the street itself is about three feet.

The court entered the following decree :

And now, April 4, 1901, this cause came on to be heard at this term and case argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz:

1. That the defendant be enjoined and restrained from interfering with the said railroad siding and the tracks thereof, and from obstructing the plaintiff's right of way, and that the plaintiff shall be permitted to reconstruct the same over and across the said Walnut street in said borough at the present grade of the said Walnut street, without prejudice to the right of the plaintiff to make application to the court hereafter for the reconstruction of the said siding at that point at a lower grade than the present grade of said Walnut street.

2. That the damages of the plaintiff arising from the defendant's acts herein complained of are not adjudicated, and this decree is without prejudice to the said plaintiff's right to recover them in any appropriate proceeding.

3. That defendant pay the costs.

*Error assigned* among others was the de ree of the court.

*George B. Gordon* and *David S. McCann*, for appellant.— The Edgewood Railroad is and always has been a private rail-

road, expressly prohibited by statute in Pennsylvania, and both a public and private nuisance : Edgewood R. R. Co.'s App., 79 Pa. 257 ; Pittsburg Nat. Bank of Commerce v. Schoenberger, 111 Pa. 95; Com. v. McNaugher, 131 Pa. 55.

As soon as the street became lawfully located across the railway, the continuance of the railway and the operation of the cars thereover at once constituted a public nuisance : Barker v. Hartman Steel Co., 129 Pa. 551; Stewart's App., 56 Pa. 413; Philadelphia v. River Front R. R. Co., 173 Pa. 334; Hopkins v. Catasauqua Mfg. Co., 180 Pa. 199.

The railroad as at present constructed and its operation as at present conducted is clearly a nuisance : Klaer v. Ridgway, 86 Pa. 529.

*George E. Alter* and *William Yost*, for appellee.

OPINION BY RICE, P. J., October 14, 1901 :

1. The first question to be considered is as to the nature, extent and duration of the easement reserved in the deed from John Z. Speer to John McIntosh.   The language of the reservation is as follows : " Reserving therefrom and thereout the right of way of the railroad now upon said land, twenty-eight (28) feet wide, with a double track through, over and upon said land, as said railroad is now located upon said land, so that said right of way shall be reserved to the said John Z. Speer, his heirs and assigns forever." The history of the building of this railroad is fully set forth in the findings of fact stated by the court below, and for that reason need not be recited at length in this opinion, but a brief recapitulation of some of the facts will help to elucidate the question for consideration.   At the date of this deed the real owners of the land described (John Z. Speer being a mere trustee) were the owners of the railroad therein referred to.   The railroad extended from the Hampton coal mines, also owned by them, to the Pennsylvania Railroad and was used by them for the transportation of coal from the former to the latter.   At the date of the passage of the ordinance in question, the track, excepting that portion extending for a distance of 852 feet from the Pennsylvania Railroad to Coal street, had been torn up.   The use made by the plaintiff (who either in severalty or in cotenancy with others had succeeded to the rights of the

cestui que trustents of John Z. Speer).of the portion of the track or switch remaining upon the ground, " was," to adopt the language of the finding of the learned judge below, " principally that of letting it out to a lumber merchant and a few others for the removal of cars loaded with lumber and other merchandise to a point at or near Coal street, and the income derived by him from this source was about $30.00 per month.  No locomotive was used on the railroad track, but the cars were moved by horses."  It is earnestly contended that in view of the purpose for which the railroad was built and was used it is to be implied that the intention of the parties in making the reservation was, that said right of way was only to be used for transportation of coal from the Hampton coal mines, and that when coal should cease to be taken from said mines the right of way should revert to adjoining owners; therefore, at the date of the ordinance in question the right of way was no longer in existence and the plaintiff had no right to occupy it with a railway.   The primary rule of construction applicable to a clause in a deed in the form of an exception or reservation is to gather the intention of the parties from the words by reading, not simply a single clause, but the entire context, and where the meaning is doubtful, by considering such circumstances as they are presumed to have considered: Clark v. Devoe, 124 N. Y. 120.   True there is an ancient maxim that a deed or grant must be construed most strongly against the grantor, and it has been said, that this applies with equal force to a reservation or restriction in a deed whereby there is a withholding of something from the grant, but it is also true that the rule is to be applied only when, by the ordinary rules of construction, the instrument leaves the intention of the parties in doubt.   If the language of the instrument is free from ambiguity, if it is sufficiently clear to define the character and extent of the reservation, the rule which resolves all doubt against the grantor, because the words of the deed are his, can have no application.   The rule does not require the court to take up the construction of the instrument with a mind hostile to the right claimed by the grantor and apparently reserved in his deed.  " It may be conceded, when the language making an exception or reservation in a deed is doubtful, it should be construed more favorably to the grantee. It is only when it is doubtful that this rule can be applied.

It has no place when the language is sufficiently clear to define the character and extent of the exception and reservation : ". Richardson v. Clements, 89 Pa. 503.   In such a case it is not the province of the court to conjure up a doubt as to whether the grantor meant what his words mean in order to find an excuse or justification for introducing into the reservation conditions, qualifications or restrictions which the parties saw fit to omit.   This would be, not to construe, but to reform, the instrument.   Upon its face this deed is unambiguous and is not rendered ambiguous by being fairly construed in the light of the existing facts.   The reservation was of a private way with the right to maintain a railroad thereon, which necessarily implied the right to transport cars upon it.   The language of the deed is manifestly descriptive of the location of the railroad upon the grantor's land, not of the use to be made of it.   It cannot, by fair and reasonable intendment, be regarded as importing a condition or covenant that the railroad should be maintained throughout its entire length from the Hampton coal mines to the Pennsylvania Railroad, or that it should be used for no other purpose than the transportation of coal.   Even if it be assumed that the use made of the railroad at the time of the passage of the ordinance was different from that intended by the parties when the reservation was made, it does not necessarily follow that the right of way for a railroad was thereby forfeited.   But, for the reasons above suggested, we are disposed to go further and to hold, that the owner of the right of way is not restricted by the reservation to such use of the railroad as was made of it at the date of the deed.   We are, therefore, unable to adopt the conclusion that the right of way had ceased to exist by reason of any act or omission of the parties for whose benefit it was reserved, or by reason of the happening of any contingency, expressed in the deed or necessarily to be implied from the circumstances, upon which it was to be extinguished.

2. The proposition next to be considered is thus stated in the printed brief of the appellant's counsel :  " As soon as the street " (Walnut street) " became lawfully located across the railway, the continuance of the railway and the operation of the cars thereover at once constituted a public nuisance."   In the consideration of this proposition it is to be noticed that the portion

of Walnut street in question was not a highway at the date of
the deed containing the reservation above considered, and that
there is no evidence that it was ever laid out as a highway by
proceedings in court or by ordinance of council. The only evi-
dence bearing upon the subject is, that after his purchase Mc-
Intosh made and recorded a plan of lots upon which was plotted
an extension of Walnut street fifty feet wide, and that thereafter
the street thus plotted was used by the public as a highway, but
without disturbing the railroad track crossing it or the use of
the same. The owners of the way continued to use the rail-
road as before. "That the public may acquire the right to a
highway by adverse use as such without the intervention of the
municipal authorities is well settled. When the right is de-
pendent upon adverse user alone, it does not become complete
until the expiration of twenty-one years. When a dedication
to public use, and the opening of a street to public travel by
the owner, is followed by its actual use by the public as a high-
way, the right in the public may become complete and absolute
within a much shorter period and without any affirmative act
of acceptance by municipal authority:" Commonwealth v.
Llewellyn, 14 Pa. Superior Ct. 214. It is not claimed, at least
there is no evidence to support such claim, that the public had
acquired a right to a highway by adverse user. As the case
stood prior to the passage of the paving ordinance, their right
was derived from, and was limited by, the dedication made by
the owner of the land. But we think it clear that nothing more
is to be implied from this dedication by McIntosh than he had
power to grant and nothing more is to be implied from such
user by the public (which as we have seen was not hostile and
exclusive but harmonious with the continued user of the rail-
road), than an acceptance of the dedication he had power to
make. In other words, neither the dedication nor the accept-
ance implied from such user nor both together amounted in law
to an appropriation of the easement reserved in the deed from
Speer to McIntosh. If prior to the passage of the paving or-
dinance the owners of the railroad had sought to recover dam-
ages from the borough upon the theory of such appropriation,
the answer probably would have been made, at least could have
been made successfully, that their right to maintain and use the
railroad had not been divested. The foregoing conclusions

imply no exercise of the power of eminent domain by private persons, no permission by the borough authorities to use a public highway for a private purpose and no use of the street which was incompatible with any rights that the public or the borough · had acquired or asserted. They imply simply that the owners of the way and the railroad upon it were entitled to enjoy the property rights, reserved in the deed from Speer to McIntosh until deprived thereof by due process of law.

3. It is urged further, that this railroad was, from its inception, nothing but a private railroad maintained to a point in connection with the Pennsylvania Railroad in direct violation of the 7th section of the Act of April 15, 1851, P. L. of 1852, p. 720. We will state the position taken by counsel in their own language: "Doubtless while these parties maintained it upon their own property it would have been difficult for any person except the state to have any standing to raise the question, but just as soon as the public acquired rights upon the ground, as they did when Walnut street became a public highway, then the custodians of the public streets had a right to abate the nuisance, or its abatement could have been required by any citizen of the commonwealth through the form of an indictment in the criminal court." To some extent the answer to this proposition has been foreshadowed. Unquestionably a person may build a railroad (by which we mean a road having rails of iron, steel or other material for the wheels of railroad cars to run upon) upon his own land or even upon the land of others with their consent, and there is nothing in the act of 1851 which can be construed as controvening that right. All that it forbids, even if the section be taken literally, is the connecting of a private railroad " with any railroad authorized to be constructed by the laws of this state, with the Ohio and New York state lines, or with any railroad constructed, or to be constructed in the states of Ohio and New York." Surely McIntosh could not be heard to say that the railroad as a whole was an unlawful thing because at a point more or less remote from the land conveyed to him it connected with a public railroad and therefore the reservation of the right to maintain and operate a railroad upon his land was void. It is not too much to say that this was not a matter which concerned him and therefore it could not affect the validity of the reservation. But if we are

correct in holding that the public acquired by the dedication only such rights as the owner of the soil had power to give, their right to tear up the tracks was of no higher grade than his. We do not say that the owners of this way had no right to connect their railroad with the Pennsylvania Railroad. We have not deemed it necessary to put a construction on the section of the act of 1851 called to our attention. Even conceding all that can be contended for by the defendant, namely that it was unlawful to make such connection, the borough had no authority to redress the grievance by tearing up the tracks at the point where they crossed Walnut street.

4. The plaintiff alleged and offered to prove (thirteenth and fourteenth assignments) " that Walnut street was obstructed frequently by the cars standing on this right of way and that the holders of the right of way were notified to stop the blockade of the street, but still continued to keep it blockaded; and further that the right of way in contention is known as Railway alley, and is allowed by permission of the plaintiff to be filled with rubbish and waste material, and is a nuisance to the neighborhood." It is not pretended that the railroad alley is a public highway or that the conditions above described are necessarily incident to the maintenance and operation of the railroad. Furthermore, as is frankly conceded by the plaintiff's counsel, it would be entirely competent for the borough to pass an ordinance providing reasonable regulations for the protection of the crossing. Such being the case the offers of evidence referred to in these assignments were clearly irrelevant and were properly rejected. The fact that the railroad was negligently operated did not give the borough the right to destroy it as a nuisance per se. This seems too plain to warrant discussion.

5. The remaining proposition to be noticed is, that the tearing up of the tracks at the crossing must be regarded as an appropriation of the right of way in the exercise of the borough's right of eminent domain, and that, as the statute has given the owners of the way an adequate remedy for the recovery of all damages they may have sustained by reason of such appropriation, they have no right to relay the railroad, and, therefore, are not entitled to relief in equity. That the borough had the power claimed and still has it may be conceded. Nothing in

this opinion or decree is to be construed as denying the existence of this power or the borough's right to exercise it in the future by appropriate action of its corporate officers and subject to its duty to make just compensation for property taken, injured or destroyed. The difficulty we find in sustaining the defendant's proposition is, that the evidence fails to disclose the fact that the borough has appropriated the right of way by an act of eminent domain. The only corporate action affecting it directly or indirectly, of which there is any evidence, is the grading and paving ordinance. But this ordinance, granting its validity, neither in terms nor as a necessary effect of carrying it into execution involved an extinguishment of the right of way, but only a raising of the grade of the railroad to conform to the changed grade of the street.

In a proceeding under the statute for the assessment of damages occasioned by an act of eminent domain, the borough's liability is for " such injury only as is the direct, immediate and necessary or unavoidable consequence of the act of eminent domain itself, irrespective of care or negligence in the doing of it: " Stork v. Philadelphia, 195 Pa. 101; Chatham Street, 16 Pa. Superior Ct. 103. The court below has found that a crossing at the new grade is entirely feasible. To the extent, therefore, that the owners of the way sustained injury as a necessary or unavoidable consequence of the change of the grade of the street, they are entitled to recover damages in the mode provided by the statute, but in view of the above finding of fact we are unable to conclude that their damages could legally be assessed in such proceeding upon the theory that their right of way for a railroad was completely extinguished.

The first paragraph of the decree is modified and amended so as to read as follows: " 1. That the defendant be enjoined and restrained from interfering with the said railroad siding and the tracks thereof, and from obstructing the plaintiff's right of way, and from hindering or obstructing the plaintiff in the reconstruction of the same over and across the said Walnut street in said borough at the present grade of said street; without prejudice, however, to the right of the corporate officers of the borough to adopt and carry into effect such ordinance or ordinances as may be authorized by law." The remaining clauses of the decree are unchanged. As thus modified and amended the decree is affirmed, the costs to be paid by the appellant.