## Havens et al. v. Graybill et al.

*Corbett & Rugh* and *John M. Myers*, for plaintiffs.

*A. A. Geary*, for defendant, Charles Graybill.

*Frampton & Courtney*, for defendant, United Natural Gas Company.

HARVEY, J., May 5, 1930.—This is a proceeding instituted by plaintiffs for judgment under the provisions of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, naming Charles Graybill and the United Natural Gas Company defendants. The jurisdiction of this court in the action as brought was questioned preliminarily, and in an opinion filed thereon Aug. 29, 1929, we held that under the provisions of the act jurisdiction was given in the case, and hearings were proceeded with.

The original petition of plaintiffs contains 13 paragraphs, to the first and eighth of which amendments were made, setting forth, in substance, as follows:

1. Names and residences of petitioners (the names and residences of additional persons, namely, Cecelia Carley, No. 101 Jefferson Street, Oil City, Pa., and Stanley Carley, by his mother and next friend, No. 101 Jefferson Street, Oil City, Pa., allowed by amendment filed).

2. Names and residences of defendants.

3. That all the plaintiffs and defendants are of full age and *sui juris*.

4. Ownership on or about April 9, 1900, of John W. Graybill in and to a certain tract of land in Millcreek Township, Clarion County, Pennsylvania, containing 66.2 acres, more or less, with description and boundaries thereof set out.

5. Conveyance by John W. Graybill of said premises (set out in paragraph 4 above) to Charles Graybill, by deed dated April 9, 1900, recorded in Clarion County, Pa., records, D. B. vol. 69, page 88.

6. Provision in deed from John W. Graybill to Charles Graybill, referred to in paragraph 5, as follows: "The said grantor hereby reserves for himself all the oil and gas premises with right of ingress, egress, over and through the said land as may be required to remove said oil and gas from said lands and when lease expires now in force the said Charles Graybill is to have full control of the re-leasing of said premises."

7. Memorandum of lease from Charles Graybill to J. A. Timlin for oil and gas purposes on tract in question dated July 28, 1904, recorded in Clarion County records, Lease and Agreement Book, vol. 19, page 374.

8. Death of John W. Graybill, Sept. 10, 1904, intestate, with names of children surviving, and names of deceased children and their children, respectively (the names of Cecelia Carley and Stanley Carley, widow and son of Chester Carley, deceased, who was a son of Ada Carley, a daughter (deceased) of John W. Graybill, added by amendment filed). The names of the wives and children of the sons of John W. Graybill, James Graybill and William Graybill, who died subsequent to the death of their father, John W. Graybill.

9. Memorandum of lease from Charles Graybill to the Tri-County Natural Gas Company of the premises in question for oil and gas purposes. Lease dated Sept. 25, 1911, recorded in Clarion County records, Lease and Agreement Book, vol. 26, page 283.

10. Memorandum of lease from Charles Graybill to Samuel Wilson of the premises in question for oil and gas purposes by lease dated Dec. 28, 1916, recorded in Clarion County records, Lease and Agreement Book, vol. 39, page 81, assigned by Samuel Wilson to the United Natural Gas Company under date of March 13, 1917. Assignment recorded in Clarion County records, Lease and Agreement Book, vol. 39, page 79.

11. Drilling of a well producing gas in paying quantities by the United Natural Gas Company upon the premises in question from which Charles Graybill has received royalty, in addition to a large amount of land rental or delay rentals from the several leases upon the premises, none of which has been distributed to the other heirs of John W. Graybill, although repeatedly requested to do so.

12. Provision in deed set out in paragraph 6 above constitutes an exception of the oil and gas rights by John W. Graybill, and that said oil and gas rights descended to and became vested in the heirs of John W. Graybill at his death, which Charles Graybill and the United Natural Gas Company deny, thus raising a material dispute as to the rights of the parties in the oil and gas rights and in the proceeds therefrom, in the following respects, and with respect to the following rights, status and legal relations now existing between the parties, plaintiffs and defendants, respectively, herein, upon which the court is asked to pass judgment, viz.:

(A) Whether the provision in the deed from John W. Graybill to Charles Graybill, quoted in paragraph 6 above, created a reservation for the life of the said John W. Graybill or an exception out of the grant, and whether title to the said oil and gas and oil and gas rights remained in the said John W. Graybill and at his death vested in his heirs.

(B) If the court determines the said provision to be an exception of the oil and gas and gas and oil rights from the grant aforesaid, whether or not the power of the said Charles Graybill to lease the said premises for oil and gas purposes ceased at the death of the said John W. Graybill.

(C) Whether or not the lease granted by the said Charles Graybill subsequent to the death of John W. Graybill, viz., the lease from Charles Graybill to the Tri-County Natural Gas Company dated Sept. 25, 1911, recorded in Clarion County Lease and Agreement Book, vol. 26, page 283, marked Exhibit "C," and the lease from Charles Graybill to Samuel Wilson dated Dec. 28, 1916, recorded in Clarion County Lease and Agreement Book, vol. 39, page 81, assigned to United Natural Gas Company by assignment dated March 31, 1917, recorded in Lease and Agreement Book No. 39, page 79, marked Exhibit "D," are valid leases.

(D) Whether Charles Graybill is the real owner of the said oil and gas and oil and gas rights and entitled to all of the proceeds from the same, or whether all the heirs of John W. Graybill are the owners of the said oil and gas and oil and gas rights and are entitled to all the proceeds from the same.

(E) Whether the United Natural Gas Company is the real owner of the gas well drilled on the Graybill farm by the said United Natural Gas Company under the lease and assignment above mentioned; whether all of the heirs of the said John W. Graybill are the real owners of the said gas well.

13. That by reason of the controversies, the rights, status and legal relations of the parties to the action ought to be determined and adjudicated by the court.

To which the defendants, respectively, answer, in substance, as follows, to wit:

*Charles Graybill—*

1. That the court is without jurisdiction in the premises.

2. That petitioners have a present adequate and complete remedy at law for the determination of all the questions arising under their petition.

3. That upon a proper action of ejectment, also upon a proper action of accounting, all the matters raised by the petition can be fully determined.

4. Certain persons in interest, descendants from John W. Graybill, are not named among the petitioners.

5. Ownership by Charles Graybill of oil and gas rights in the premises by virtue of deed from John W. Graybill to respondent, Charles Graybill, described in paragraph 5 of the petition.

*United Natural Gas Company—*

1. That the court is without jurisdiction in the premises.

2. That petitioners have a present, adequate and complete remedy at law for the determination of all the matters alleged in petition to be at variance between them and respondents.

3. Denying the right of petitioners to resort to the statute invoked in this proceeding, avers that by action of ejectment and by action for mesne profits all the matters set out in said petition to be in dispute and in controversy can and ought to be fully, properly and orderly determined.

4. All parties in interest have not been named and included as parties to the proceeding, and under such status a full and complete settlement of matters alleged to be in controversy could not be had, and, therefore, the petition and all proceedings thereon should be dismissed.

5. In event said petition and proceedings are not dismissed, this respondent admits the facts set forth in paragraphs 4 and 5 of petition, and says that by deed mentioned in said paragraphs 4 and 5 John W. Graybill conveyed to Charles Graybill the premises described in said deed and all estates therein, subject to certain restrictions, conditions and limitations therein, designated in said deed as reservations, during the lifetime of John W. Graybill, and that said reservations are now fully ended and terminated by reason of the death

404

of John W. Graybill on Sept. 10, 1904, whereupon Charles Graybill became invested with absolute ownership of said land and all estates therein and the absolute control thereof.

6. For answer to paragraph 6 of said petition, this respondent refers to deed mentioned in its entirety, and further says that the copy of said deed attached to petition and identified as Exhibit "A" is not a true copy thereof.

7. Averments in paragraph 7 admitted, but denies that there is any liability attaching to it by reason of said averments or the lease there mentioned.

8. Answering paragraph 8, reference is made to paragraph 4 hereof.

9. Averments of paragraph 9 admitted, but any liability attaching to it by reason of said averments or the lease there mentioned denied.

10. Averments of paragraph 10 are admitted, and avers that said premises became vested in this respondent for the purpose of mining and operating for oil and gas thereon under the lease identified as Exhibit "D" and assignment thereof to it. Further averring that Exhibit "D" as attached to said petition is not a true copy of the instrument so identified. Also, further, that Clara Wing Havens, one of the plaintiffs, by writings addressed to this respondent, has confirmed said lease and acknowledged and admitted the said Charles Graybill has the full control of the leasing of said premises.

11. Answering paragraph 11 of petition, respondent says it drilled and completed a well upon premises leased, Exhibit "D," and that said well has produced, and now is producing, gas in commercial and paying quantities. That prior to the drilling of said well it paid rental under the terms of lease for the delayed completion of a well on the said premises to the lessor, and that after the drilling and completing of said well it paid the royalty for the gas from said well as provided for in said lease until it was notified on Feb. 14, 1928, by written notice from counsel for Clara Havens to pay no more land or well rentals pending a determination of the rights of the owners of the oil and gas premises, the subject of the lease, after which it made no further payments on account of said lease, although ready and willing to do so. Denies that there is any liability on it to the plaintiffs for the moneys so paid to its lessor, Charles Graybill. Further avers that said notice was in effect a confirmation and ratification of said lease and recognition of the validity thereof by said Clara Havens. Also, that averments in paragraph 11, to which respondent makes no answer, are matters of which it has no knowledge and cannot answer the same, and denies materiality thereof as to it.

12. Answering paragraph 12 of petition, denies that John W. Graybill made an exception of the oil and gas and oil and gas rights in deed mentioned in said paragraph. Makes reference to said deed in its entirety for the true intent of the parties to said deed and the proper construction thereof, averring that by such reference the intention of the parties is shown to be the imposition of certain restrictions, conditions or limitations of said premises during the lifetime of said John W. Graybill which are in said deed designated as reservations and are intended so to be by the parties and are to be so construed, referring to paragraph 5 of its answer. Further avers that the well now drilled on said premises was drilled under the lease or agreement made between Charles S. Graybill and Samuel Wilson, dated Dec. 28, 1916, and assigned to this respondent, and that said lease is a valid contract and binding upon the premises; the said Charles Graybill had full control of said premises for the leasing thereof for oil and gas purposes, and that no other person or persons then had or now have any authority or control over the leasing of said premises for oil and gas purposes. Further, that even if it should be determined that by deed in question between John W. Graybill and Charles

Graybill it was intended that the oil and gas on said premises were by said deed excepted out of the operation of said deed and remain in the said John W. Graybill and his heirs, the power and authority given to Charles Graybill and vested in him by said deed to have full control of the re-leasing of said premises continues in the said Charles Graybill because of his interest in the premises so conveyed, including the oil and gas aforesaid, and said power and authority did not cease at the death of John W. Graybill. Further, that Harry Graybill and Mrs. Grace Miller, plaintiffs and petitioners, each had notice and knowledge at the time of the operations on said premises for oil and gas at large expenditure of money by the respondent, and at no time during said operations, or since, did either Harry Graybill or Mrs. Grace Miller make or assert any claim or objection to or against this respondent, or against its interest or estate in said premises, nor against the right of respondent to carry on and conduct said operations, such as is now set forth by them in said petition, until the filing of said petition in this proceeding, and, therefore, by reason thereof, said Harry Graybill and Mrs. Grace Miller are, and in equity ought to be, estopped to deny now any rights to respondent in said premises under said lease or to deny the estate of respondent thereunder in the oil and gas in and under said premises.

We are requested by Charles Graybill in a written instrument filed in the proceedings to find as follows, viz.:

1. The court has no jurisdiction in the present form of action.

2. It was the intention of John W. Graybill, the grantor in said deed of conveyance, to convey to Charles Graybill the premises described in said conveyance, but to reserve therefrom the following:

(a) One room in house on said premises for his personal occupancy.

(b) The proceeds of the oil and gas from lease then on said premises as long as the said John W. Graybill lived, providing the said lease be so long in force.

3. In the event that the lease in force at the date of the deed should end and be determined prior to the death of John W. Graybill, the grantee in said deed had the right to re-lease the said premises for oil and gas purposes upon such terms as the said grantee might determine, and also the right to receive the rents, issues and profits therefrom.

The jurisdiction of the court over the action in its present form was first raised by, and renewed in the request of, Charles Graybill, defendant, in his request for findings filed April 8, 1930. To this we filed an opinion and ruling Aug. 29, 1929, holding that the Act of June 18, 1923, P. L. 840, known as the Uniform Declaratory Judgments Act, by its provisions gives the court jurisdiction over the instant case. To this opinion and ruling we adhere. The answers to this point raised in answer 1, 2, 3 and 4 of Charles Graybill and United Natural Gas Company, respectively, to petition will be listed in order in "Conclusions of Law" hereinafter.

The questions pertinent to the issue to be conclusively determined are as follows, and once the primary questions are properly determined all else should be readily adjusted. The primary questions are these, viz.:

1. The character of the provision in the deed from John W. Graybill, dated April 9, 1900, to Charles Graybill as to the oil and gas rights, whether: (1) a "reservation" or an "exception;" (2) if an exception, whether title to the oil and gas rights remained in John W. Graybill and at his death vested in his heirs.

2. If concluded to be an "exception," whether or not the power of the said Charles Graybill to lease the said premises for oil and gas purposes ceased at the death of John W. Graybill.

3. Whether the lease mentioned in paragraph 7 of the petition is still a valid lease.

4. Whether the leases made by Charles Graybill (C. S. Graybill) subsequent to the death of his father, John W. Graybill, were and are good and valid leases for oil and gas purposes on the premises, viz., lease dated Sept. 25, 1911, Charles Graybill to Tri-County Natural Gas Company, and lease dated Dec. 28, 1916, Charles Graybill to Samuel Wilson, assigned to United Natural Gas Company.

5. Whether Charles Graybill is the real owner of the oil and gas and oil and gas rights, and entitled to all the proceeds from the same, or whether all the heirs of John W. Graybill are the owners of the said oil and gas and oil and gas rights, and are entitled to all the proceeds from the same.

6. Whether the United Natural Gas Company is the real owner of the gas well drilled on the Graybill land by the said United Natural Gas Company under the lease from Charles Graybill to Samuel Wilson dated Dec. 28, 1916, assigned to the United Natural Gas Company, or whether all the heirs of the said John W. Graybill are the real owners of the said gas well.

John W. Graybill, late of Millcreek Township, Clarion County, Pennsylvania, at one time owned a tract of land in said Millcreek Township containing 66.2 acres, more or less. The land was leased for oil and gas purposes. His wife died in the year 1895. Under date of April 9, 1900, he made, executed and delivered a deed for the said tract of land to his son, Charles Graybill, in which the consideration named was $1000. In the said deed is the following:

"The premises conveyed for the price stipulated therein with the following reservations:

"1. That the said Charles Graybill, grantee herein named, is hereby enjoined from conveying the within described premises during the lifetime of John W. Graybill, the grantor herein named, unless the consent of the said grantor be first had and obtained in writing, or John W. Graybill, the said grantor joining in said deed of conveyance, and the said John W. Graybill reserves one room in the house on said premises and the said Charles Graybill to board said John W. Graybill while he lives or while he remains with the said Charles Graybill.

"2. The said grantor hereby reserves for himself all the oil and gas premises with right of ingress, egress over and through said land as may be required to remove said oil and gas from said lands, and when lease expires now in force, the said Charles Graybill is to have full control of the re-leasing of said premises."

John W. Graybill died Sept. 10, 1904, intestate, leaving to survive him six children. There is no record of any lease referred to in the deed dated April 9, 1900, as "now in force," nor any record of operations thereunder upon the premises. We must presume it expired before July 28, 1904, the date of the lease made for oil and gas purposes on the said land by Charles Graybill to J. A. Timlin, recorded in Clarion County records, Lease and Agreement Book, vol. 19, page 374. In this lease Charles Graybill exercised the powers granted to him in the deed of April 9, 1900, namely, "full control of the re-leasing of the said premises." His father was still living. Charles Graybill was made lessor in the lease. All royalties and rentals were made deliverable and payable to him. This lease determined under its own terms. Under date of Sept. 25, 1911, Charles Graybill again leased the premises for oil and gas purposes to the Tri-County Natural Gas Company. In this lease he was named sole lessor, and all royalties and rentals were made deliverable and payable to him. This lease, too, determined under its own terms. Under date of Dec. 28,

1916, Charles Graybill again leased the said premises for oil and gas purposes to Samuel Wilson. Samuel Wilson assigned the lease to the United Natural Gas Company, defendant named herein. In this lease Charles Graybill appeared as sole lessor, all rentals and royalties to be paid and deliverable to him, with a provision that "if the lessor does not have title to all the oil and gas in the leased premises there shall be refunded such part of all payments made by the lessee hereunder as shall be proportionate to the outstanding title, and payments thereafter to be made shall be reduced in the same proportions."

Under the terms of this lease the United Natural Gas Company paid to Charles Graybill delay rentals until the completion of a well drilled on the premises in December, 1926, after which time royalty was paid to him until on or about Feb. 14, 1928, when notice was given it to pay no more rentals, pending a determination of the rights of the owners of the oil and gas premises, the subject of the lease.

The most vital question to be determined is the character of the "reserve" as to the oil and gas premises with rights incident, contained in deed from John W. Graybill to Charles Graybill dated April 9, 1900.

In the opinion of President Judge Rice, in Corey *v.* Edgewood Borough (No. 1), 18 Pa. Superior Ct. 216, 222, is embodied the rule of construction pursued in this state as well as many other states, to be followed in this case:

"The primary rule of construction applicable to a clause in a deed in the form of an exception or reservation is to gather the intention of the parties from the words by reading, not simply a single clause, but the entire context, and where the meaning is doubtful, by considering such circumstances as they are presumed to have considered. . . . True, there is an ancient maxim that a deed or grant must be construed most strongly against the grantor, and it has been said, that this applies with equal force to a reservation or restriction in a deed whereby there is a withholding of something from the grant, but it is also true that the rule is to be applied only when, by the ordinary rules of construction, the instrument leaves the intention of the parties in doubt. If the language of the instrument is free from ambiguity, if it is sufficiently clear to define the character and extent of the reservation, the rule which resolves all doubt against the grantor, because the words of the deed are his, can have no application. The rule does not require the court to take up the construction of the instrument with a mind hostile to the right claimed by the grantor and apparently reserved in his deed. 'It may be conceded when the language making an exception or reservation in a deed is doubtful, it should be construed more favorably to the grantee. It is only when it is doubtful that this rule can be applied.'" See, also, 18 Corpus Juris, § 350, page 346.

Following this rule, our first duty is to seek the intention of the parties from the circumstances and conditions surrounding them at the time the deed was made. From what is before us we see John W. Graybill, a man past eighty years of age; wife dead; children grown; some married and gone to homes of their own; possessed of a farm on which is located his "home." He desires to retain a residence in the former home house with assurance that he may have it while he lives, unless it is agreeable to him and he consents that the property may be sold by his son Charles, to whom he sells it upon conditions; he "reserves" one room in the house (no particular room specified); his son Charles shall "board" him while he lives or while he remains with the said Charles Graybill, his son, to whom he sells the farm. There is no doubt whatever that the predominating thought in the mind of John W. Graybill

was an assured place of residence and an assured maintenance as to food and care incident to "boarding" *during his lifetime.* What property, real or personal, he might have possessed does not appear. All we know is the consideration of $1000 noted in the deed. Does the thought for his own particular welfare still predominate when it comes to the matter of the oil and gas and rights incident thereto? Does the language of the second clause of the "reservation" constitute a reservation or an "exception?" It is not the technical term "reservation" or "exception" which rules. It is what the *intention* of the grantor was at the making of the instrument that fixes the character of the provision.

"Exceptions and reservations differ in legal effect, but in their creation there is no magic in words, and if the meaning is clear either expression will operate for the purpose designed.

"Though apt words of reservation be used in a deed, they will be construed as creating an exception, if such was the design of the parties ascertained from the entire instrument:" Mandle *v.* Gharing, 256 Pa. 121.

After careful consideration, weighing the several provisions as to the object sought by John W. Graybill in the so-called "reserves" in the deed, we are constrained to believe that the provisions were intended to provide for the direct, personal welfare of John W. Graybill *during his lifetime,* this including the provision as to oil and gas in the second clause of the reservation. We are further brought to this conclusion as to clause 2 in the deed from the wording thereof. Not unmindful that with an "exception" no words of inheritance are necessary, the estate "excepted" never having gone out of the grantor, what was in the mind of John W. Graybill at the moment he was providing for his own personal welfare at the time of drawing the deed of April 9, 1900? Was it not an assurance of his own bodily comfort and care during his life? In the first clause that is clear and explicit. In the second clause he "reserves," in effect, any income from the oil and gas from the premises then under lease for purposes of operating the same until such lease expires. For whom? "For himself." We would not be thought to be splitting a hair "betwixt the north and northwest side," but right here is the crux of the matter. If he, in clause 2, had omitted *"for* himself," or even had made it *"to* himself;" had omitted reference to any "lease now in force" (if an "exception," whether there was a lease for the oil and gas or not would be immaterial); had not given to Charles Graybill, the grantee in the deed, "full control of the re-leasing of the premises" for oil and gas, "a power as large as the grant," we would hold the second clause as an "exception," but, inasmuch as we construe "for himself" to be intended to mean "during the lifetime of John W. Graybill" as contained in clause 1 with respect to the conveying away of the premises sold and granted to Charles Graybill by deed of April 9, 1900, upon which are predicated the "reserves" in clauses 1 and 2; that reference to the "lease now in force" from which an income was doubtless received was specially mentioned; and that an unrestricted control over the oil and gas, and rights incident, co-equal with and as large as the grant in the deed was, on the expiration of the lease then in force, definitely vested in Charles Graybill, we must conclude that the so-called "reserves" in the deed, clause 2, was not an "exception" of the oil and gas and oil and gas rights in the grant from John W. Graybill to Charles Graybill under deed of April 9, 1900, but, with the "reserves" in clause 1, a condition to the grant.

So concluding, discussion upon other questions is unnecessary.

Our conclusions of law, answering the requests for findings made by Charles Graybill, will cover the salient questions raised in the petition, viz.:

### Conclusions of law.

1. That this action as instituted under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, is cognizable by this court in its present form, the provisions of said act giving jurisdiction therein and thereon.

2. That from consideration of the entire deed, it was the intention of John W. Graybill to convey to Charles Graybill by deed of April 9, 1900, the fee in the premises, subject to the conditions, termed "reserves," in the deed during the lifetime of the grantor, John W. Graybill, and at his death, the conditions being fulfilled, the fee to vest in Charles Graybill.

3. No questions being raised that the conditions in the deed were not fulfilled, the said John W. Graybill dying in the residence house on the premises, we must presume, and so conclude, that the several conditions in the deed were fulfilled.

4. That all leases for oil and gas purposes made by Charles Graybill on and subsequent to July 28, 1904, were valid leases.

5. That leases for oil and gas purposes from Charles Graybill to J. A. Timlin, July 28, 1904, and from Charles Graybill to Tri-County Natural Gas Company, Sept. 25, 1911, are extinct as leases upon the Graybill lands. That the lease for oil and gas purposes from Charles Graybill to Samuel Wilson, Dec. 28, 1916, assigned by Samuel Wilson to the United Natural Gas Company, is a valid and subsisting lease.

6. That Charles Graybill is the real owner of the gas and oil and oil and gas rights, subject to the lease now held by the United Natural Gas Company, and is entitled to all the proceeds from the same.

7. That the United Natural Gas Company is the real owner of the gas well now drilled on the Graybill lands under the lease from Charles Graybill to Samuel Wilson, Dec. 28, 1916, assigned to the United Natural Gas Company.

### Decree.

And now, May 5, 1930, after hearing testimony, the arguments of counsel and examination of cases cited in briefs filed, upon due consideration, for the reasons stated and conclusions of law hereinabove contained, it is ordered and adjudged that Charles Graybill took title to the lands conveyed by deed of John W. Graybill to Charles Graybill dated April 9, 1900, recorded in Clarion County records, Deed Book, vol. 69, page 88, including the oil and gas estate in the premises, subject to certain conditions contained in said deed to run during the lifetime of grantor; that upon the death of John W. Graybill, Sept. 10, 1904, the conditions in the deed being fulfilled, title in fee simple in said premises vested in Charles Graybill.

That the lease for the purpose of operating for oil and gas upon the premises given by Charles (C. S.) Graybill to Samuel Wilson under date of Dec. 28, 1916, assigned by said Samuel Wilson to the United Natural Gas Company, recorded in Clarion County records, Lease and Agreement Book, vol. 39, page 79, was, and is, a good and valid lease for the purposes contained therein; and that Charles (S.) Graybill, lessor, is entitled to all the rentals and royalties accrued and accruing under the terms contained in said lease.

That the well drilled upon the premises by the United Natural Gas Company now producing gas is the property of the said United Natural Gas Company.

That the plaintiffs pay the costs of these proceedings.

From Merritt H. Davis, Clarion, Pa.